IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,           )
                                    )
     Plaintiff,                    )   CR. NO. 12-38
                                    )
   vs.                              )
                                    )
ALAFAKA PATIENCE OPUIYO,            )
                                    )
      Defendant.                 )
_____)

TRANSCRIPT OF SENTENCING

July 26, 2012

---

BEFORE:     THE HONORABLE LEONIE M. BRINKEMA
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: OFFICE OF THE UNITED STATES ATTORNEY
            BY: PATRICIA HAYES, ESQ.

FOR THE DEFENDANT:  RONALD L. HISS, ESQ.
            GREGORY HUNTER, ESQ.

---

OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR,CRR
            U.S. District Court
            401 Courthouse Square
            Alexandria, VA  22314
            (703)501-1580

1                    (Thereupon, the following was heard in open

2     court at 2:11 p.m.)

3                    THE CLERK:  Criminal case 12-38, United

4     States of America versus Alafaka Patience Opuiyo.

5                    Would counsel please note their appearance

6     for the record.

7                    MS. HAYNES:  Patricia Haynes on behalf of the

8     United States.

9                    Good afternoon, Your Honor.

10                   THE COURT:  Good afternoon, counsel.

11                   MR. HISS:  Good morning, Your Honor.  Ron

12    Hiss on behalf of Ms. Opuiyo.

13                   THE COURT:  You have co-counsel with you

14    today?

15                   MR. HISS:  Your Honor, this is Mr. Hunter.

16    And I'm going to ask him to address the Court briefly on

17    the sentencing -- on our position paper because while

18    working with him, I found that he was far more capable of

19    arguing the one little technical part in our position

20    paper than I am.  And with the Court's permission, he's

21    faster and more eloquent than I am.

22                   THE COURT:  Are you co-counsel in this case?

23                   MR. HISS:  No, ma'am.

24                   THE COURT:  Well, Mr. Hunter, you're not an

25    attorney of record in this case, are you?

1          MR. HUNTER:  I'm not, Your Honor.  I was

2    brought in associated with Mr. Hiss to help with some

3    guidelines issues.  I met with him and the defendant to

4    discuss that and --

5          MR. HISS:  And if the Court would like me to

6    hand up a quick praecipe for this.  It's a five-minute

7    argument.  He's just better than I am.  And I just

8    learned --

9          THE COURT:  Well, I'm not going to have the

10   two attorneys arguing the sentencing issues.

11         Have a seat for a second.

12         Mr. Hiss, I'm assuming you had a time to go

13   over the presentence report and go over it thoroughly

14   with your client?

15         MR. HISS:  In detail.

16         THE COURT:  All right.  Are there any factual

17   corrections, changes, additions or deletions you want to

18   have made to the report as well?

19         MR. HISS:  No, ma'am.

20         THE COURT:  Then as you know, the Probation

21   Office has calculated the offense legal here as a level

22   18 and has given your client a criminal history of two.

23         The advisory guideline range that results

24   from that is a 30 to 37-month spread.  There's a one to

25   3-year period of supervised release, a fine range of

1    6,000 to $500,000 and a $100 special assessment.

2            And my understanding from your papers is

3    you're not disputing the offense level.  You are

4    disputing the criminal history.  You wanted the Court to

5    use a criminal history one which would establish a

6    guideline range of 27 to 33 months.  And then in your

7    paper, you are asking for a 10-month sentence split 5

8    months incarceration, 5 months community confinement.

9            MR. HISS:  Yes, ma'am.

10           THE COURT:  That's the position that you

11   filed?

12           MR. HISS:  Yes, ma'am.  And the --

13           THE COURT:  Go ahead.

14           MR. HISS:  The only argument was the 27-month

15   versus the 30-month.  And Mr. Hunter, to his credit, and

16   I know he's not a -- entered this case, explained it to

17   me better than I can learn it.  And I asked him if he

18   would be willing to speak to the Court because frankly, I

19   think he would do a better job than I do because I do so

20   few sentencings over here and the Sentencing Guidelines

21   are difficult for me.

22           THE COURT:  All right.

23           MR. HISS:  And I don't think the U.S.

24   Attorney would have a huge argument.

25           THE COURT:  Let me hear what Mr. Hunter has

1    to say.

2              Go ahead, Mr. Hunter.

3              MR. HUNTER:  Thank you, Judge.  Really, the

4    issue on criminal history comes down to a single count of

5    prosecution in the Baltimore County District Court.  It's

6    counted by the probation officer properly because the

7    guidelines have in 4(a)1.2(c)(1) where it lists several

8    crimes that would not normally be counted.  It's a

9    prostitution charge.  It's related to the instant offense

10   and so that would make it proper.

11             It would not ordinarily be counted under the

12   usual definition of conviction because there's never been

13   a conviction.

14             But under 4(a)1.1, the guidelines commission

15   has differentiated between diversionary sentences and

16   those were a judge hear facts and hears after a plea or

17   some factual finding or counted as convictions and those

18   like the DC prostitution charge that was also noted by

19   the probation officer are not counted because the

20   diversion happens before there's any -- any use of the

21   word "guilt".

22             However, even if it's counted by the Court as

23   one point, the addition of two more points under 4(a)1.2

24   we find to be onerous because the only requirement of the

25   Baltimore General District Court was that she pay $207.50

in fines and costs.

The Sentencing Guidelines Commission in their application notes -- notes that there has to be some sort of supervisory or custodial conduct by the government in this case.

Unsupervised probation could be enough. However, in order for the Court simply to pay a fine by itself would not be enough.

The only thing in the record, Judge, is that she was ordered to pay that fine which she did, and it was dismissed.

Bringing that up to three points would treat that non-conviction the same way that the Sentencing Guidelines would treat a conviction for a serious felony resulting in a prison sentence of 13 months or more.

The Sentencing Guidelines Commission understands and in their own application notes, this is an imperfect measure.  They used the maximum penalty in each of these crimes and in assessing how they do this.  And noting that it's imperfect, they encourage the Court to depart from the guidelines in certain circumstances.

We believe that this is one of those circumstances.

The other guideline issue that was difficult and novel under 2(g)1.1 adding five points for the

```
 1   additional -- essentially treating underlying acts of
 2   prostitution -- of promoting a commercial sex act as
 3   counts of conviction for guidelines purposes drives the
 4   sentence from 12 months for an ordinary -- an ordinary
 5   conviction.
 6               THE COURT:  That issue was not raised in
 7   Mr. Hiss's memo as I read it.  Was it?
 8               MR. HUNTER:  It was not raised in his memo,
 9   Judge.
10               THE COURT:  Then it's not fair to the
11   government to be bringing up that technical argument this
12   late in the game.
13               MR. HUNTER:  We understand that, Judge.
14               We're simply noting that that was something
15   that was difficult for counsel.  It was something that I
16   did some research on and helped him with, and it more
17   than doubled the sentence.
18               THE COURT:  All right.
19               MR. HUNTER:  Thank you, Judge.
20               THE COURT:  Ms. Haynes, you want to respond
21   to any of that?
22               MS. HAYNES:  Your Honor, I assume the Court
23   is not considering argument under 2(g)1.1.
24               THE COURT:  I don't think it's appropriate to
25   be raising it that late.
```

1    MS. HAYNES:  Your Honor, I'm looking really

2    at the 4(a)1.2 and more as a fairness issue and what's a

3    fair thing to do in terms of concerning criminal history.

4         I frankly don't -- I can't get down to the

5    weeds on this as much as Mr. Hunter has done.  But I

6    think that she does have a history clearly of

7    prostitution.  She continued engaging in prostitution

8    when she was on probation.  So I think it is properly

9    assessed.

10        That being said, you know, I do think that,

11   you know, in the end, Ms. Opuiyo has been very

12   cooperative in the case.  I think ultimately we're going

13   to be back before the Court on a Rule 35.  I can't swear

14   to that because I'm not able to do that.  But I think at

15   some point we will be back before the Court.  And so at

16   this point we would ask the Court to go ahead and assess

17   the criminal history points as found in the presentence

18   report.

19        THE COURT:  All right.  Well, there's a

20   certain degree of -- and I've said this many times

21   before, of artificiality in the guidelines which is why

22   *Booker* is such a wonderful safety valve so to speak in

23   this whole area of sentencing.

24        The decision by the Commission to treat

25   dispositions before -- such as these deferred impositions

of sentence cases as part of criminal history does make good sense.

　　　　If somebody really feels that they're innocent, they shouldn't even accept those dispositions. The case ought to be fought.  And my experience has been that diversion programs are simply a way of giving a person the ability to have a clean record and a clean start.

　　　　What is troubling about this defendant's criminal history and the government has pointed out both just now and in their papers is the defendant was arrested for sexual solicitation in November of 2008 and she had counsel during those proceedings and she got a diversionary sentence or diversionary treatment from the District Court and I think that was in District of Columbia, yeah.  And she didn't get a criminal history point for that at all.

　　　　But you'd think she'd get a wake up call from that.  And the fact that only a few months later, I mean I think it's 2 to 3 months later, on January 23rd, 2009, she's arrested for prostitution now in the District Court of Baltimore County, Maryland.

　　　　Again, she has counsel.  Apparently she was advertising on Craig's List for prostitution services. And there was apparently a second count of prostitution

1    that had gotten nul prosed as part of that overall case.

2    So there was obviously more than one instance.

3            And again the Maryland court gave her

4    probation before a judgement of 18 months of unsupervised

5    probation, a second wake up call.

6            And the problem in this case is that while

7    she's ---during that period of unsupervised probation

8    rather than getting the message that prostitution is

9    against the law, she gets involved in this case.

10            So, whether using criminal history one or

11    criminal history two, the only difference it makes is the

12    guideline range.  But in terms of an informed, rational

13    sentencing decision in my view, it makes no difference.

14            The criminal history for a defendant is a

15    very important 3553(a) fact because it indicates among

16    other factors, the potential for recidivism.

17            And if -- and obviously, generous sentences

18    or generous resolutions by other courts have not achieved

19    a change in behavior by a defendant.  Then my view is my

20    job is to make sure that the next sentence she gets, the

21    one she gets from this court is going to get her

22    attention and make a reasonable shot at her not getting

23    back involved in the same activity.

24            So, that's what this record tells me.

25            For purposes of the record, I'm not going to

change the calculations done by the Probation Office.  I
think there are sufficiently good grounds to leave them
as they are.

So, I will work from the guidelines as
calculated in the presentence report.  And my
understanding is that the government is asking for the
minimum sentence of 30 months.  Is that correct?

MS. HAYNES:  That's correct.

THE COURT:  All right, Mr. Hiss, I'll hear
from you.

MR. HISS:  Your Honor, now I can address the
sentencing in an area I'm considerably comfortable with.

This sentencing arm is a little difficult for
me in that I understand the government's -- strike that.
I understand the Court's allegation not only for --

THE COURT:  It's not an allegation.  It's a
concern.

MR. HISS:  Excuse me.

THE COURT:  It's not an allegation.  It's a
concern.

MR. HISS:  I understand the Court's concern.
I'm sorry I said allegation.

The Court's got to prevent this from
happening again.  There's got to be deterrence.  There's
got to be proper punishment.

And also, we want to address what may happen should she receive incarceration what happens when she gets out.

I'm going to leave my scripted argument because the Court was concerned, and I believe rightfully so, we certainly discussed this, the two prior prostitutions and then being involved -- she's pled guilty to money laundering -- being involved in a money laundering involving prostitution.

Two ways courts have to prevent that. The Court can hang a hammer over defendant, probation, jail. The Court can put her in jail and she -- assuming she can't commit the crime while no jail.

But I think the Court has a third avenue and that avenue is to allow the person to correct their life. And in this case, that's what I'm going to argue. It's a very small thing, but in this case, it's really lucky.

Most of the cases that I think this Court hears, the person gets convicted and after they're convicted they have very little chance of improving themselves once they get out of probation, incarceration, whatever.

And in this case, Ms. Opuiyo, when she made bond, one of the conditions that Judge Buchanan set was employment. She went out to where she had worked before.

1    They would not hire her because of this.

2         On her own, and I think she checked with her

3    supervising pretrial officer, she went to a school.  And

4    it seems like a very small thing, but it turned out to be

5    a very large thing.  She went to professional

6    bartendering school.  And if I can pass this up.

7         THE COURT:  I think it's sufficient.  It's in

8    the record.

9         MR. HISS:  I believe it is.  That has turned

10   out to be a silver lining in this horrible cloud.  She

11   has been able to work as a banquet bartender and what's

12   called a service bartender.

13        She's not at a bar doing a glamorous job like

14   one might see at Clyde's or some bar in the metropolitan

15   area.  She's the one at the end of the bar.  She's the

16   one in the kitchen.

17        And I asked her this morning when briefing

18   this, I said a couple of hundred drinks?  She laughed at

19   me and said 4 or 500 drinks.  It's grueling hard work.

20   It has to be done right because people are a little

21   picky.  But she is able to do this.  She's taken her

22   training.

23        She's now taking her experience.  She's

24   leveraged that where she can make 3 or $400 a night and

25   be employed steadily.

1    We're looking at a person that can make 60,

2 $70,000 a year until such time as she can't bartend any

3 more.

4    Out in the public, bartenders that work bars

5 have a tendency to get in a little trouble.  Bartenders

6 that sit in the kitchen and bartenders that do banquet

7 and do the physical work -- she doesn't dress up or

8 anything.  She's in a work outfit, and can make that kind

9 of money, gives this Court the security to know that when

10 she's finished whatever this Court decides to do, she's

11 going to be able to make a living, pay her fines, be a

12 productive member of society.

13    The reason she got involved in prostitution

14 in the first place and got sucked back into it is because

15 she needed to make money.  She's well educated.  She's

16 got a public relations company that wasn't making any

17 money and she got sucked into it and I don't have any

18 other way to describe other than that.

19    I'd like the Court to consider not only the

20 punishment, which she's now a convicted felon.  I'd like

21 this Court to remember that's a very serious thing.

22    For the rest of her life forever, she'll be a

23 convicted felon.  And anyway you cut it, no matter how

24 much we try to do to say we help these folks that are

25 convicted felon, she's a second class citizen forever.

```
1    That's a huge punishment.
2              The monies have been taken away.  These were
3    money crimes.  The money is the goal.  The best way to
4    punish a money crime has always been in my opinion, take
5    the money away.
6              Now we've got to address the fact would she
7    go back into prostitution?  And I think she now has the
8    avenue out of prostitution.  And I think that's something
9    the Court should really consider when applying this
10   sentence.
11             My position papers remain the same.  I'd ask
12   the Court to consider every way possible to let this
13   woman continue to work.
14             I think the Court will be pleased that
15   they've taken somebody that is run down a bad path,
16   someone who's dimmed their future by their acts.  And
17   there's no other way to put it because now she's a
18   convicted felon.  She's got this.  It's going to be an
19   anchor on her forever.
20             But she's taken herself, lifted herself up by
21   her own booth straps during the pendency.  She did it
22   quickly during the pendency of this prosecution because
23   she couldn't get any other job, stumbled upon this, and
24   it has turned out to be a silver lining in this terrible
25   cloud.
```

```
1            I'd ask the Court to consider that and

2    seriously consider it.  The punishment is more than

3    sufficient to prevent her or anybody else that might

4    think about doing this.  She's a convicted felon.  She's

5    been prosecuted by the Eastern District of Virginia.

6    She's subject to incarceration.  And all the proceeds she

7    had is gone.

8            And I'm sure the Court's read all this and

9    the facts.  She took money, collected money at the

10   direction of her, whatever he was, and put it in his bank

11   accounts.

12           She lives very sparsely as the Court may or

13   have not picked up on.  She had two vehicles that were

14   forfeited.  In fact we signed the forfeiture orders this

15   morning when we walked into court.  She's got nothing to

16   show for it.

17           But she does have an opportunity now, an

18   opportunity never to be before this court or any other

19   court, an opportunity to be a productive member of

20   society, an opportunity to make a decent living.

21           This is not somebody who is going to be out

22   there scratching around trying to make 12, $15,000 a year

23   who is likely to fall back into drug distribution or

24   prostitution or anything for easy money.  She can now

25   make some real serious decent money.
```

```
 1              I'd ask the Court to truly consider that and
 2    sentence appropriately, give the consideration to my
 3    position paper that I was so graciously helped by
 4    Mr. Hunter.
 5              THE COURT:  All right, thank you.
 6              Ms. Opuiyo, if you'll come up to the lectern.
 7    This is your chance to say anything you'd like to say
 8    before sentence is imposed.
 9              MS. OPUIYO:  I want to say I'm very
10    remorseful, just that I had to stand before you in this
11    capacity.  It's a very sad day in my life.
12              You brought a very valid point that I should
13    have woke up.  And I didn't.  And I just ask for the
14    mercy of the court.
15              THE COURT:  All right.  Well, I do find that
16    a variant sentence is appropriate in this case.
17              Stay there, Ms. Opuiyo.
18              MS. OPUIYO:  I'm sorry.
19              THE COURT:  A variant sentence is appropriate
20    in this case because of the post arrests efforts at
21    rehabilitation.  Again, all that's in your favor.
22              The problem I have, of course, it's only been
23    a couple of months.  I don't know if it's going to stick
24    or not and that's the thing we never know for certain.
25              A sentence of incarceration, however, is
```

necessary in this case in part, again, because of the record which you do present as well as the Court has to send a clear message to others, because this kind of a crime is a crime that is a conscious crime.

People do it for money or sometimes there are other reasons.  But you have to send a message to folks if you're going to engage in this kind of conduct.  As long as this conduct is illegal, there are prices to be paid.

I think given the fact that you have made such an effort to get some other kind of employment and the fact that you did not have a managerial role but you had set up this organization yourself, I'm going to give you credit for that and order that a variant sentence of 20 months in the custody of the Bureau of Prisons with credit for any time you've served be imposed today.

That 20-month sentence will be followed by two years of supervised release.

Now, the terms and conditions of supervision are first of all, your uniform good behavior.  That means you cannot violate any federal, state or local laws while on supervision.

Do you understand that?

MS. OPUIYO:  Yes, I do.

THE COURT:  Secondly, you have to follow all

1    the conditions of supervision that will be explained on

2    the judgment order and explained to you by the Probation

3    Office.

4              Do you understand that?

5              MS. OPUIYO:  Yes, I do.

6              THE COURT:  Now, as a special condition of

7    supervision because of your mental health history, I want

8    to make sure that you get adequate mental health

9    evaluation.  And if the evaluation indicates that you

10   need treatment, then such in or out-patient treatment

11   including the taking of any medication or therapy as

12   directed.

13             Do you understand?

14             MS. OPUIYO:  Yes, I do.

15             THE COURT:  I find that you should have

16   enough resources to pay at least a portion of that.

17             But if the Probation Office finds that you

18   cannot pay all the cost, I don't want money to be a

19   factor that prevents you from getting the necessary

20   mental health treatment.

21             Do you understand that?

22             MS. OPUIYO:  Yes, I do.

23             THE COURT:  You'll have to waive any privacy

24   rights that you have to the mental health records so that

25   the Probation Office can monitor your compliance with any

1   mental health concerns.

2           Do you understand?

3           MS. OPUIYO:  Yes, I do.

4           THE COURT:  In addition, I'm going to require

5   that you give up any privacy rights that you have to your

6   financial records.  I want the Probation Office to be

7   able to monitor your work revenue, make sure you're

8   paying your taxes, make sure that there aren't any

9   unexplained sources of income that might suggest that

10  you're doing something other than legal work.

11          You understand that?

12          MS. OPUIYO:  Yes, I do.

13          THE COURT:  There is no history of drug abuse

14  in this case so the mandatory drug testing is waived.

15  However, the Probation Office can require a drug test

16  from you at any time and you must comply.

17          Do you understand that?

18          MS. OPUIYO:  Yes, I do.

19          THE COURT:  Are there forfeiture orders?

20          MS. HAYNES:  Yes, there is.

21          THE COURT:  All right.  Let's hand those up.

22          In light of the forfeiture orders and your

23  overall financial situation, I do not find you have

24  sufficient resources to pay the cost of incarceration,

25  any other costs of supervision or the statutory fine.

But the special assessment of $100 must be paid.

Another consent order of forfeiture under that order, you are giving up any property interest or rights that you have in a 2008 Honda Accord as well as $21,410 that was seized from you on January 26, 2012.

And I see that you have signed that order.

This appeal -- do you agree that's what you've agreed to give up?

MS. OPUIYO:  Yes, I have.

THE COURT:  All right.  Were you forced or pressured in any respect into making that decision?

MS. OPUIYO:  No, I was not.

THE COURT:  Then I'm going to go ahead and sign it today.

Now, because there's been no problems on bond, I assume the government is not opposing self surrender.

MS. HAYNES:  No, Your Honor.

THE COURT:  All right.  I'm going to allow you, Ms. Opuiyo, to stay out on your current bond which means you'll have a few more weeks when you can continue to work and get your life in order and perhaps before that is over, the Rule 35 motion, if it's coming will be filed.

The conditions of your bond remain intact

exactly as they currently are with the additional

condition that when you are notified by the U.S. Marshal

where to report and when, you must get yourself to the

facility.

Do you understand that?

MS. OPUIYO:  Yes.

THE COURT:  Your failure to report can be

treated, number one, as a new crime of escape and number

two, would also violate the conditions of your bond and

would subject you to being prosecuted for bond jumping.

Do you understand that?

MS. OPUIYO:  Yes.

THE COURT:  Is there a recommendation that

you want for geographical designation?

MR. HISS:  Alderson or Hazelton.

THE COURT:  FCI.

MR. HISS:  I believe that's in the position

paper.

THE COURT:  All right, Alderson or Hazelton.

When you leave court today, you need to take

your client to the Marshal Service because she's going to

be a self surrender to Pretrial because her bond is being

continued.

And Ms. Moran from the Probation Office is

here as well.

1          Thank you.  You're free to go.

2          (Proceeding concluded at 2:35 p.m.)

CERTIFICATE OF REPORTER

1

2

3        I, Renecia Wilson, an official court
4 reporter for the United State District Court of Virginia,
5 Alexandria Division, do hereby certify that I reported by
6 machine shorthand, in my official capacity, the
7 proceedings had upon the sentencing in the case of United
8 States of America v. Alafaka P. Opuiyo.
9        I further certify that I was authorized and
10 did report by stenotype the proceedings and evidence in
11 said sentencing, and that the foregoing pages, numbered 1
12 to 23, inclusive, constitute the official transcript of
13 said proceedings as taken from my shorthand notes.
14        IN WITNESS WHEREOF, I have hereto subscribed
15 my name this  22nd  day of  October , 2012.

16

17                              /s/
                        Renecia Wilson, RMR, CRR
18                      Official Court Reporter

19

20

21

22

23

24

25